**FOR PUBLICATION**

**IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS & ST. JOHN**

```
                                )
                                )
IN RE: JADE MANAGEMENT           )    Civil No. 2005-148
SERVICES, d/b/a CROWN MOUNTAIN   )
WATER SERVICES,                  )    Re: Bankr. No. 02-00032
                                )
            Appellant.          )
_____  )
```

**APPEARANCES:**

**Benjamin A. Currence, Esq.**
St. Thomas, U.S.V.I.
     *For Jade Management Services, d/b/a Crown Mountain Water
     Services,*

**Carol A. Rich, Esq.**
St. Thomas, U.S.V.I.
     *For Nancy D'Anna, Esq.*

**MEMORANDUM OPINION**

**GÓMEZ, C.J.**

Before the Court is the appeal of Jade Management Services,
d/b/a Crown Mountain Water Services ("Jade") from the Bankruptcy
Division's September 8, 2005, order awarding attorneys' fees and
costs to Nancy D'Anna, Esquire.  For the reasons stated below,
the Court will affirm the September 8, 2005, order.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

Jade was a business primarily engaged in the sale of water
flowing from a well located at 13C Estate Linberg Bay, St.
Thomas, U.S. Virgin Islands (the "Property").  Crown Mountain

*In re: Jade Management Services, d/b/a Crown Mountain Water Services*
Civil No. 2005-148
Memorandum Opinion
Page 2

Water, Incorporated ("CMW") was a sister corporation of Jade, which owned and operated a water business on the Property. Jade and CMW were owned and managed by Jeannie Benjamin ("Benjamin").

In 1995, Jade and CMW filed merger documents with the Office of the Lieutenant Governor of the United States Virgin Islands. However, the Office of the Lieutenant Governor did not process the documentation for the Jade-CMW merger for several years after it was filed, due to missing annual reports for the companies. Nonetheless, Jade and CMW have operated as if they were merged since 1995.

On September 11, 2002, Jade and Benjamin filed a voluntary petition pursuant to chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 1101, *et seq.* ("Chapter 11"). The Chapter 11 matter was captioned, *In re: Jade Management Services, d/b/a Crown Mountain Water Services,* Bankruptcy Case Number 02-00032 ("*In re: Jade*").

On September 12, 2002, Benjamin, individually, filed a voluntary petition under chapter 13 of the United States Bankruptcy Code, 11 U.S.C. §§ 1301, *et seq.* ("Chapter 13"). The Chapter 13 matter was captioned, *In re Benjamin*, Bankruptcy Case Number 02-00033 ("*In re Benjamin*").

At the time *In re Jade* and *In re Benjamin* were commenced, a personal injury action filed by Alvin and Eleanor Whyte, *Whyte v.*

*In re: Jade Management Services, d/b/a Crown Mountain Water Services*
Civil No. 2005-148
Memorandum Opinion
Page 3

*Jade, et al.,* was pending against Jade and CMW in the Superior
Court of the Virgin Islands (the "Superior Court").

On October 9, 2002, the Bankruptcy Division entered an order
in *In re Jade* dismissing Benjamin from the matter.

On January 9, 2003, Jade filed a motion to employ Attorney
D'Anna as counsel in *In re Jade*.  No objections were filed to the
motion to employ counsel, and the Bankruptcy Division granted the
motion on January 17, 2003.

On January 13, 2003, the Whytes appeared in *In re Jade*,
asserting an unsecured claim (the "Whyte Claim") against Jade
based on *Whyte v. Jade, et al.,* which was pending in the Superior
Court.

On August 15, 2003, Jade filed a disclosure statement and
proposed a plan to provide payment to its creditors, which
contemplated selling the business and using the proceeds to pay
all creditors.  According to the proposed plan, "the Debtor
[Jade] has paid Nancy D'Anna, Esq. the sum of $2,500.00 for
services, costs and expenses in these proceedings, and has agreed
to pay additional sums as the Court may allow upon application."
(Debtor's Plan of Reorganization 3, *In re Jade,* Bankr. No. 02-
00032, Aug. 15, 2003.)

*In re: Jade Management Services, d/b/a Crown Mountain Water Services*
Civil No. 2005-148
Memorandum Opinion
Page 4

On September 3, 2003, Jade filed an objection to the Whyte Claim in *In re Jade*.  The objection argued in essence that no legal basis existed for the Whyte Claim.

On January 10, 2005, the court entered an order scheduling the sale of Jade's assets pursuant to the Chapter 11 plan for February 15, 2005.

On February 11, 2005, Ursula and the Eleven Thousand Virgins, LLC ("Ursula") and Benjamin entered into a stock purchase agreement.  That agreement contemplated that Ursula would buy all shares of Jade's capital stock from Benjamin, and was made subject to the approval of the court in *In re Benjamin*.

Also on February 11, 2005, Ursula filed a motion in *In re Jade* to stay the February 15, 2005, sale of Jade's assets in light of the stock purchase agreement.  The court in *In re Benjamin* approved the stock purchase agreement.  On February 15, 2005, Jade was sold to Ursula in accordance with the agreement.

On April 11, 2005, Jade filed a notice of substitution of counsel in *In re Jade*.  The notice stated that Benjamin A. Currence, Esquire had replaced Attorney D'Anna as counsel for Jade.

On May 12, 2005, Attorney D'Anna filed an application for compensation in *In re Jade*.  The application stated that Attorney

*In re: Jade Management Services, d/b/a Crown Mountain Water Services*
Civil No. 2005-148
Memorandum Opinion
Page 5

D'Anna had received a retainer fee in the amount of $2,000 from Jade.  It also sought reimbursement for $70,251.36 in outstanding fees and costs incurred throughout the pendency of the matter.

On May 16, 2005, Jade, under new ownership by Ursula, submitted a second amended disclosure statement and a second amended Chapter 11 plan of reorganization.  That plan stated that "[t]he administrative expenses of the Debtor's Chapter 11 case allowed pursuant to [11 U.S.C. § 503(b)] and given priority pursuant to [11 U.S.C. § 507(a)(1)] shall be paid in full upon the Effective Date . . . . " (Debtor's Second Am. Plan of Reorganization 5.)

On July 15, 2005, Jade filed an opposition to Attorney D'Anna's fee application in *In re Jade*.  It argued that the Bankruptcy Division erroneously approved the employment of Attorney D'Anna as counsel for Jade because she "was not a disinterested person as required by [11 U.S.C. § 327(a)] in that she represented interests materially adverse to the interests of the Debtor's estate, including the interests of Jeanie Benjamin, who until recently was the sole shareholder of the debtor." (Opp'n to D'Anna's Fee App. 1, July 15, 2005.)  Alternatively, Jade contended that, "[i]n the event that the employment of D'Anna is authorized, the compensation sought is unreasonable in

*In re: Jade Management Services, d/b/a Crown Mountain Water Services*
Civil No. 2005-148
Memorandum Opinion
Page 6

light of what was actually accomplished over approximately three years." (*Id.* at 2.)

On September 11, 2005, Jade submitted a memorandum in support of its opposition to Attorney D'Anna's fee application.

The Bankruptcy Division conducted a hearing on Attorney D'Anna's fee application on September 8, 2005. At the hearing, the United States Trustee stated on the record that it had no objection to Attorney D'Anna's fee application. The bankruptcy judge rejected Jade's argument that Attorney D'Anna's appointment was approved in error. The bankruptcy judge further questioned Jade's standing to object to Attorney D'Anna's employment, noting:

> THE COURT: I don't know where the standing comes up for your clients, in the position of reorganized debtors, to do nothing more than fund this case. I don't know where they came up with the ability to raise the conflict at this stage when they stand in the shoes of the pre-confirmation debtor, who didn't raise the issues at the time they were . . . ripe before the Court, nor have any creditors come forward or the U.S. Trustees office, to raise those issues.

(Hr'g Tr. 5, Sept. 8, 2005.) Despite her reservations, the judge was willing to assume that Jade had standing to object to Attorney D'Anna's fee petition. The bankruptcy judge ruled on the merits that Attorney D'Anna's "fees, as charged, were reasonable. The work done was required in order to prosecute the

*In re: Jade Management Services, d/b/a Crown Mountain Water Services*
Civil No. 2005-148
Memorandum Opinion
Page 7

estate to conclusion, whether through liquidation or reorganization." (*Id.* at 16.)  Ultimately, the Bankruptcy Division overruled Jade's objection and awarded the full amount of requested fees and costs to Attorney D'Anna.

Also on September 8, 2005, the Bankruptcy Division entered a written order overruling Jade's objections and approving Attorney D'Anna's application for fees and costs in the amount of $70,251.36.

Jade timely appealed from the September 8, 2005, order.

## II.  **JURISDICTION AND STANDARD OF REVIEW**

The Court has jurisdiction to review this case pursuant to Title 28 U.S.C. § 158(a).[1]  The Court will review the Bankruptcy Division's findings of fact for clear error and will exercise plenary review over questions of law. *In re Barbel*, No. 01-221, 2004 U.S. Dist. LEXIS 19417, at *2 (D.V.I. Sept. 21, 2004) ("A district court reviews the Bankruptcy Division's conclusions of law *de novo* but may only review findings of fact that are clearly erroneous.") (citing Fed. R. Bankr. P. 8013; *In re Excalibur*

---

[1]  Title 28 U.S.C. § 158(a) provides that "[t]he district courts of the United States shall have jurisdiction to hear appeals . . . of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under [28 U.S.C. § 157].  An appeal under this subsection shall be taken only to the district court for the judicial district in which the bankruptcy judge is serving." 28 U.S.C. § 158(a) (2008).

*In re: Jade Management Services, d/b/a Crown Mountain Water Services*
Civil No. 2005-148
Memorandum Opinion
Page 8

*Auto. Corp.*, 859 F.2d 454, 457 (7th Cir. 1988)), *aff'd* 183 Fed.

Appx. 227 (3d Cir. 2006).

"[A] question of standing . . . is subject to *de novo*

review." *Otto v. Pennsylvania State Educ. Ass'n-NEA*, 330 F.3d

125, 130 (3d Cir. 2003).  The issue of estoppel is also reviewed

*de novo. In re RFE Industries, Inc.* 283 F.3d 159, 164 (3d Cir.

2002).  The Bankruptcy Division's "[f]ee awards are reviewed for

an abuse of discretion, which can occur if the judge fails to

apply the proper legal standard or to follow proper procedures in

making the determination, or bases an award upon findings of fact

that are clearly erroneous." *Zolfo, Cooper & Co. v. Sunbeam-Oster

Co., Inc*., 50 F.3d 253, 257 (3d Cir. 1995) (citations and

quotations omitted).

### III.  <u>ANALYSIS</u>

**A.  Standing**

Although neither party has addressed the issue of Jade's

standing to bring this appeal, the Court must consider Jade's

standing as a threshold issue. *See In re Combustion Eng'g, Inc*.,

391 F.3d 190, 214 (3d Cir. 2004) ("As a threshold matter, we must

determine whether appellants have standing . . . .") (citing

*Bender v. Williamsport Area Sch. Dist*., 475 U.S. 534, 546 n.8

(1986)).

*In re: Jade Management Services, d/b/a Crown Mountain Water Services*
Civil No. 2005-148
Memorandum Opinion
Page 9

The United States Court of Appeals for the Third Circuit employs the "persons aggrieved" test to determine if a person may appeal a bankruptcy court order. *In re Combustion Engineering, Inc.*, 391 F.3d 190, 214 (3d Cir. 2004).  A person is aggrieved "only if the bankruptcy court's order 'diminishes their property, increases their burdens, or impairs their rights.'" *In re PWS Holding Corp.*, 228 F.3d 224, 249 (3d Cir. 2000) (quoting *In re Dykes*, 10 F.3d 184, 187 (3d Cir. 1993)).  "Thus, only those 'whose rights or interests are directly and adversely affected pecuniarily' by an order of the bankruptcy court may bring an appeal." *Id.* (quoting *In re Dykes*, 10 F.3d at 187).

"The 'person aggrieved' standard, which is more stringent than the constitutional test for standing, serves the acute need to limit collateral appeals in the bankruptcy context." *In re O'Brien Envtl. Energy, Inc.*, 181 F.3d 527, 530 (3d Cir. 1999) (citing *In re Dykes*, 10 F.3d at 187).  The United States Court of Appeals for the Ninth Circuit has explained that the need to limit such appeals

> springs from the nature of bankruptcy litigation
> which almost always involves the interests of
> persons who are not formally parties to the
> litigation.  In the course of administration of the
> bankruptcy estate disputes arise in which numerous
> persons are to some degree interested.  Efficient
> judicial administration requires that appellate

*In re: Jade Management Services, d/b/a Crown Mountain Water Services*
Civil No. 2005-148
Memorandum Opinion
Page 10

          review be limited to those persons whose interests
          are directly affected.

*Fondiller v. Robertson*, 707 F.2d 441, 443 (9th Cir. 1983), *cited with approval in In re O'Brien Envtl. Energy*, 181 F.3d at 530-31. "The question whether a party has standing to appeal in a bankruptcy case is generally an issue of fact for the district court." *In re O'Brien Envtl. Energy, Inc.*, 181 F.3d at 531 (citing *In re Dykes*, 10 F.3d at 188).

    The Court acknowledges the general rule that "a bankrupt that has no hope of obtaining any return from its estate consistently has been held to lack standing to contest orders affecting the size of the estate." *In re J. M. Wells, Inc.*, 575 F.2d 329, 331 (1st Cir. 1978) (holding that a bankrupt company whose assets were substantially exceeded by its debts could not appeal from an allegedly excessive award of attorneys' fees paid out of the estate).  Here, however, there is no evidence in the record that Jade's assets were substantially exceeded by its debts.  To the contrary, the stock purchase agreement approved by the Bankruptcy Division expressly stated that it would result in the recapitalization of Jade in an amount sufficient to pay its secured and unsecured creditors in full.  Thus, to the extent the Bankruptcy Division's September 8, 2005, order awarding attorneys' fees and costs to Attorney D'Anna increases the amount

*In re: Jade Management Services, d/b/a Crown Mountain Water Services*
Civil No. 2005-148
Memorandum Opinion
Page 11

of administrative expenses Jade will have to pay, it directly and
adversely affects Jade's rights pecuniarily.  Accordingly, Jade
is a "person aggrieved" and has standing to bring this appeal.

**B.   Estoppel**

Attorney D'Anna argues that Jade should be estopped from
challenging her employment in *In re Jade.*

A party claiming equitable estoppel must establish that "(1)
a representation of fact was made to them, (2) upon which they
had a right to rely, and (3) the denial of the represented fact
by the party making the representation would result in injury to
the relying party." *In re RFE Industries, Inc*., 283 F.3d 159, 164
(3d Cir. 2002) (quoting *Wheeling-Pittsburgh Steel Corp. v.
McCune*, 836 F.2d 153, 162-163 (3d Cir. 1987)).

Here, Attorney D'Anna correctly points out that Jade sought
and obtained the Bankruptcy Division's approval to employ her in
2003.  She also correctly asserts that Jade stated in its amended
disclosure statement and plan of reorganization that all
administrative expenses, including attorneys' fees would be paid
in full.  However, there is nothing in the record to directly or
indirectly suggest that Jade ever represented to Attorney D'Anna
that it would accept all future awards of attorneys' fees, or
waive the right to object to such awards.  Attorney D'Anna does

*In re: Jade Management Services, d/b/a Crown Mountain Water Services*
Civil No. 2005-148
Memorandum Opinion
Page 12

not assert, nor does the record reveal that Jade made any affirmative representation of fact to Attorney D'Anna upon which she had a right to rely.  Accordingly, Jade is not estopped from challenging the Bankruptcy Division's September 8, 2005, order awarding attorneys' fees and costs to Attorney D'Anna. *Cf. id.* (holding that a Chapter 11 debtor was not estopped from objecting to a settlement despite the fact that the debtor previously proposed that the bankruptcy court retain limited jurisdiction to approve the settlement because, *inter alia,* the debtor did not plainly state it was waiving any opportunity to object to settlement).

**C.   Merits**

Jade contends that the Bankruptcy Division erred by awarding attorneys' fees and costs to Attorney D'Anna because Attorney D'Anna was not qualified to serve as counsel for Jade in *In re Jade* in the first instance.  In Jade's view, the Bankruptcy Division lacked the discretion to award Attorney D'Anna compensation because Attorney D'Anna failed to disclose her connections with Benjamin in her employment application and was not a "disinterested person" under 11 U.S.C. § 327(a) ("Section 327(a)").

*In re: Jade Management Services, d/b/a Crown Mountain Water Services*
Civil No. 2005-148
Memorandum Opinion
Page 13

Section 327(a) "restricts retention of lawyers and other professionals to those who do not hold or represent an interest adverse to the estate and are disinterested." *In re: Congoleum Corp.,* 426 F.3d 675, 688-89 (3d Cir. 2005); 11 U.S.C. § 327(a) (1986).[2]

Title 11 U.S.C. § 101(14) ("Section 101(14)") defines a "disinterested person" as

> a person that—
>
> > (A) is not a creditor, an equity security holder, or an insider;
> >
> > (B) is not and was not, within 2 years before the date of the filing of the petition, a director, officer, or employee of the debtor; and

---

[2]   Section 327(a) provides:

> Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. § 327(a).  "Section 327 applies to a debtor in possession as well as a trustee." *In re: Congoleum Corp.,* 426 F.3d at 689 n.13; *see also United States Trustee v. Price Waterhouse*, 19 F.3d 138 (3d Cir.1994) ("Under 11 U.S.C. § 1107(a), the power of a debtor in possession to employ accountants or other professionals is the same as that of a trustee.").

*In re: Jade Management Services, d/b/a Crown Mountain Water Services*
Civil No. 2005-148
Memorandum Opinion
Page 14

> (C) does not have an interest materially
> adverse to the interest of the estate or of any
> class of creditors or equity security holders,
> by reason of any direct or indirect
> relationship to, connection with, or interest
> in, the debtor, or for any other reason.

11 U.S.C. § 101(14) (2006).[3]   Subsection (C) of Section 101(14),

referred to as the "catch-all clause," is "broad enough to

include anyone who in the slightest degree might have some

interest or relationship that would even faintly color the

independence and impartial attitude required by the Code and the

Bankruptcy Rules." *In re BH & P Inc.*, 949 F.2d 1300, 1308 (3d

Cir. 1991) (quotation omitted).

    To enforce the requirements of Section 327(a), the Federal

Rules of Bankruptcy Procedure mandate that any application for

employment as a professional "shall be accompanied by a verified

statement of the person to be employed setting forth the person's

connections *with the debtor, creditors, any other party in*

*interest*, their respective attorneys and accountants, the United

States trustee, or any person employed in the office of the

United States trustee." Fed. R. Bank. P. 2014(a) (emphasis

added).   "There must be at a minimum full and timely disclosure

_____

    [3]  The version of Section 101(14) in effect at the time the
Bankruptcy Division approved Attorney D'Anna's employment
contained identical substantive provisions as the current version
of the statute. *See* 11 U.S.C. § 101(14)(A), (D)-(E) (2000).

*In re: Jade Management Services, d/b/a Crown Mountain Water Services*
Civil No. 2005-148
Memorandum Opinion
Page 15

of the details of any given arrangement.  Armed with knowledge of

all the relevant facts, the bankruptcy court must determine, case

by case, whether [a conflict exists]." *In re Martin*, 817 F.2d

175, 182 (1st Cir. 1987).  Counsel who fail to disclose conflicts

of interest proceed at their own risk because such failure is

grounds for denial of compensation. *See Rome v. Braunstein,* 19

F.3d 54, 59 (1st Cir. 1994) ("An attorney's failure to

sufficiently disclose a conflict of interest may be grounds for

denial of compensation."); *cf. In re Bressman*, 327 F.3d 229, 240

(3d Cir 2003) ("[A] bankruptcy court may order the disgorgement

of fees received by an attorney when he or she has ignored

reporting and court approval duties imposed by the Code.").

Furthermore, 11 U.S.C. § 328(c) ("Section 328(c)") provides

that

> the court may deny allowance of compensation for
> services and reimbursement of expenses of a
> professional person employed under section 327 . . .
> of this title if, at any time during such
> professional person's employment under section 327 .
> . . of this title, such professional person is not a
> disinterested person, or represents or holds an
> interest adverse to the interest of the estate with
> respect to the matter on which such professional
> person is employed.

*Id.* at § 328(c) (2005).  The plain language of Section 328(c)

makes clear that a bankruptcy court has the discretion to deny

compensation to a professional who ceases to be disinterested

*In re: Jade Management Services, d/b/a Crown Mountain Water Services*
Civil No. 2005-148
Memorandum Opinion
Page 16

subsequent to her appointment.  Here, however, Jade claims that
the Bankruptcy Division should have denied Attorney D'Anna's
application for compensation because she was not a "disinterested
person" at the time her employment was approved by the Bankruptcy
Division.

Appellate courts disagree as to whether a bankruptcy court
has the discretion to award fees and costs to an attorney who was
improperly employed in violation of Section 327(a) at the outset
because she was not a "disinterested person."

In *In re Federated Dept. Stores, Inc*., 44 F.3d 1310 (6th
Cir. 1995), the United States Court pf Appeals for the Sixth
Circuit held the a bankruptcy court lacks the discretion to award
compensation to a professional who was improperly appointed in
the first place.  The court reasoned that Section 328(c) does not
apply to a professional whose initial appointment was in error.
"Rather, the decision to grant compensation is governed by
[Section] 330(a) and that provision, like [Section] 328(c),
clearly requires a valid professional appointment under [Section]
327(a) as a prerequisite to an award of compensation." *Id.* at
1320 (internal citations and quotations omitted).

In contrast, in *In re Crivello,* 134 F.3d 831 (7th Cir.
1998), the United States Court of Appeals for the Seventh Circuit

*In re: Jade Management Services, d/b/a Crown Mountain Water Services*
Civil No. 2005-148
Memorandum Opinion
Page 17

held that a bankruptcy court has discretion to award compensation

to a professional, even if the appointment of the professional

was improper from the outset.  The court explained that

> [i]f a bankruptcy court has the capacity to deny
> compensation when "at any time during such
> professional person's employment" that person is not
> disinterested, then only explicit language in the
> Code may limit this grant of discretion.  Since the
> Code contains no such language, the bankruptcy court
> has discretion even if "at any time during . . .
> employment" refers to the onset of employment. If a
> bankruptcy court errs in approving a professional
> person's employment, that person is either "not a
> disinterested person" or "represents or holds an
> interest adverse to the interest of the estate" for
> the entire duration of that person's employment.
> Under the plain language of the provision, [Section]
> 328(c) covers questions about whether this
> erroneously employed professional merits
> compensation.

*Id.* at 837 (noting that "[a] reviewing court may not insert

additional language into the Code to conform it with the court's

view of bankruptcy law").

While the Third Circuit has not directly considered the

issue of whether a bankruptcy court has the discretion to award

compensation to a professional who was improperly appointed in

the first instance, its reasoning in *United States Trustee v.*

*Price Waterhouse,* 19 F.3d 138 (3d. Cir. 1994), lends some

guidance.  In *Price Waterhouse,* the court rejected the debtor's

argument that the word "may" in Section 328(c) created ambiguity

*In re: Jade Management Services, d/b/a Crown Mountain Water Services*
Civil No. 2005-148
Memorandum Opinion
Page 18

concerning te meaning of Section 327(a).  The court explained:

"we interpret Section 328(c) to mean that if a

non-'disinterested' professional person is improperly employed,

or if a professional person ceases to be 'disinterested' 'at any

time during such professional person's employment,' the court may

deny compensation and reimbursement." *Id.* at 142.  The Third

Circuit's reading of Section 328(c) in *Price Waterhouse* arguably

suggests that Section 328(c) should apply to professionals whose

initial appointment was erroneous.

This Court finds that the balance of authorities as well as

the plain language of Section 328(c) give the Bankruptcy Division

discretion to grant or deny compensation, even to an attorney who

was not "disinterested" when appointed.  Even assuming that

Attorney D'Anna's appointment was erroneous from the outset due

to her failure to disclose a conflict or because she was not

"disinterested," the Bankruptcy Division was not *per se* bound to

deny her request for compensation. *See In re Crivello,* 134 F.3d

at 837; *see also In re Prince,* 40 F.3d 356, 359 (11th Cir. 1994)

("[T]he language of 11 U.S.C. § 328(c) *permits* a court to deny

compensation to professionals found not to be disinterested

persons, but does not *require* a denial of fees in those

instances."); *In re Authorized Factory Serv., Inc., a/k/a AFS,*

*In re: Jade Management Services, d/b/a Crown Mountain Water Services*
Civil No. 2005-148
Memorandum Opinion
Page 19

283 B.R. 684, 690 (Bankr. W.D. Pa. 2002) ("There is no *per se* rule that we must deny compensation to a professional who was not disinterested at the time their appointment was approved."). Rather, the Bankruptcy Division correctly ruled that it had the sound discretion to grant or deny compensation to Attorney D'Anna. *See id.*

Jade alternatively claims that the Bankruptcy Division abused its discretion under Section 328(c) when it awarded $70,251.36 in fees and costs to Attorney D'Anna.

Title 11 U.S.C. § 330(a)(3) ("Section 330(a)(3)") guides the bankruptcy court's discretion in awarding attorneys' fees and costs.  Pursuant to the statute,

> In determining the amount of reasonable compensation to be awarded to an examiner, trustee under chapter 11, or professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including--
>
> (A) the time spent on such services;
>
> (B) the rates charged for such services;
>
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

*In re: Jade Management Services, d/b/a Crown Mountain Water Services*
Civil No. 2005-148
Memorandum Opinion
Page 20

> (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

> (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3) (2005).

Jade does not take issue with the $180 per hour rate charged by Attorney D'Anna.  Instead, Jade contends that Attorney D'Anna was not entitled to compensation for any fees or costs incurred in connection with the Whyte Claim or the CMW merger.  Jade asserts that such services were neither reasonably likely to benefit the Chapter 11 estate nor necessary to the administration of the case.

With respect to compensation for services related to the Whyte Claim, Jade argues that such services were duplicative and unnecessary because Jade purportedly had independent legal representation in defending that claim through its insurance carrier.  Jade claims that any work done in connection with the Whyte Claim conferred no benefit on the Chapter 11 estate in *In re Jade*.  At the September 8, 2005, hearing, counsel for Jade raised the issue to the bankruptcy judge:

*In re: Jade Management Services, d/b/a Crown Mountain Water Services*
Civil No. 2005-148
Memorandum Opinion
Page 21

> [JADE'S ATTORNEY:] [O]ne of the issues . . . is the
> amount of time that was spent . . .  Regarding the
> [Whyte] claim, especially, in light of the fact
> [that] the debtor's insurance carrier provided legal
> representation with regard to that claim . . . .
>
> THE COURT: [T]he response to that point indicates
> that Ms. D'Anna had to go right up to the day of
> trial before the – [Whytes'] counsel agree to enter
> into a stipulation, and then, in fact, there was a
> recess taken the first day of trial for that
> purpose, of finalizing the negotiation.  So, as a
> litigator, you have to prepare your witnesses.  You
> have to show up to court if the court has set a
> trial, so I can't see why the activities she took
> were inappropriate.

(H'rg Tr. 10-11, Sept. 8, 2005.)

The bankruptcy judge further acknowledged that

> THE COURT: [T]he value in the estate had to be
> determined, whether it was for liquidation purposes
> or for reorganization purposes, and *fixing the*
> *amount of a contingent, unliquidated, and disputed*
> *$1.7 million claim is something that the debtor's*
> *counsel has to do.*  Unfortunately, if it gets
> settled the day of trial, then you spend a lot of
> time getting ready for a trial that doesn't take
> place.  But the liquidation of that claim is still
> to the benefit of all creditors in the estate and
> would have been necessary whether this was
> liquidated or reorganized.  So in that respect the
> work is both necessary, the amount of time spent
> appears to me to be reasonable, the hourly rate
> charged is certainly reasonable under these
> circumstances and given the fact that this case was
> filed in 2002, which was some time ago and there has
> not been an increase in the rates charged throughout
> that time. . . .  The work benefitted the estate and
> the reorganized debtor, and I think the fee
> application is itself reasonable and well-stated.
> And therefore I'm going to overrule the objection,

*In re: Jade Management Services, d/b/a Crown Mountain Water Services*
Civil No. 2005-148
Memorandum Opinion
Page 22

>           assuming there is standing on behalf of the
>           objecting party, and award fees as requested.

(*Id.* at 17) (emphasis added).

The Bankruptcy Division did not explicitly address the issue of Attorney D'Anna's contribution to the litigation of the Whyte Claim in light of the representation provided by the insurance company. The record does not reveal whether or not Jade and CMW were ever in fact represented by counsel hired by an insurance carrier in the *Whyte v. Jade Mgmt Servs., et al.* Even assuming, *arguendo,* that a portion of the legal services related to the Whyte Claim were performed by a different attorney, it does not follow that Attorney D'Anna incurred no expenses in connection with that matter. The circumstance of more than one attorney representing an insured is an ordinary occurrence, as a defense provided by an insurer is often limited to the policy amount. Jade has not presented, nor is the Court aware of any reason to doubt the finding of the bankruptcy judge that Attorney D'Anna actually performed worked in connection to the Whyte Claim that was necessary, reasonable, and beneficial to the estate.

Regarding Attorney D'Anna's request for compensation for services related to the Jade-CMW merger, Jade argues that such services conferred no benefit on the Chapter 11 estate because the merger resulted in the assumption of the Whyte Claim, which

*In re: Jade Management Services, d/b/a Crown Mountain Water Services*
Civil No. 2005-148
Memorandum Opinion
Page 23

was of no value for Jade.  Jade contends that compensation is

inappropriate for such merger-related legal services.

     With respect to this objection, the bankruptcy judge stated

during the September 8, 2005, hearing that

>          the . . . objection is based on something that
>          happened many years pre-petition, based on the fact
>          that a merger apparently was never completed, at
>          least appropriately completed under Virgin Islands
>          law.  Whether its ever been subsequently completed
>          or not, I don't know.  None of the papers tell me
>          that.  But whether it was or not completed, that was
>          something in purchasing this business the way
>          [Ursula] did, [Ursula] could certainly check the
>          records in the Virgin Islands to find out whether or
>          not that merger ever took place or was completed.  I
>          don't know how they can stand to raise an objection
>          to somebody's fee application based on the fact that
>          if they're unhappy with their due diligence, their
>          due diligence didn't reveal it before they entered
>          this agreement.  You know, I can't base . . . an
>          objection to a fee application on something that
>          happened several years before the bankruptcy was
>          even filed.

(*Id.*)

     This Court agrees with the Bankruptcy Division that, at the

time it entered into the stock purchase agreement, Ursula should

reasonably have known about Attorney D'Anna's services in

connection with the Jade-CMW merger.  The Bankruptcy Division did

not err in awarding compensation for fees and costs incurred by

Attorney D'Anna in connection with the Jade-CMW merger.

Furthermore, Jade has failed to present any other reason why the

*In re: Jade Management Services, d/b/a Crown Mountain Water Services*
Civil No. 2005-148
Memorandum Opinion
Page 24

services rendered by Attorney D'Anna were unnecessary or
unreasonable.  On the contrary, the Court finds that it would be
reasonable for counsel in Attorney D'Anna's shoes to work to
complete the Jade-CMW merger, which had been pending for
approximately a decade.

Accordingly, the Court finds that the Bankruptcy Division
did not abuse its discretion in awarding Attorney D'Anna
$70,251.36 in fees and costs.

### IV.  <u>CONCLUSION</u>

For the foregoing reasons, the Court will affirm the
Bankruptcy Division's September 8, 2005, fee award.  An
appropriate Order follows.


S\_____
          **Curtis V. Gómez**
          **Chief Judge**